### HUTCHINSON v. OTIS et al.

### In re HUTCHINSON.

(Circuit Court of Appeals, First Circuit. May 22, 1902.)

### Nos. 415, 416.

1. BANKRUPTCY—REVIEW BY APPELLATE COURT.

The question whether proceedings relating to an adverse claim to a fund in the hands of a trustee in bankruptcy arise strictly on the bankruptcy side of the court, or should be regarded as within the rules governing summary intervening petitions, reserved.

2. SAME—PROOF OF CLAIM—AMENDMENT.

A court of bankruptcy may permit the amendment of a proof of claim after the expiration of the year allowed for proving claims, where there was sufficient to amend by in the original proof.

3. SAME—RELINQUISHMENT OF LIEN THROUGH MISTAKE—RIGHT TO REINSTATEMENT.

A nonresident creditor of a bankrupt brought garnishment suits against him in other states within four months prior to the beginning of proceedings in bankruptcy, and obtained judgments, which he collected from the garnishees in the belief that the garnishments were valid. At the time of such payment both he and the garnishees knew of the bankruptcy, but it did not appear that the creditor knew that the bankruptcy proceedings were commenced within four months after his garnishments. Thereafter the seat of the bankrupt in a stock exchange was sold, upon the proceeds of which, under the rules of the exchange, the creditor had a lien for his debt; but in the belief that he had received payment he waived his lien by an informal letter, and the proceeds were paid over by the exchange to the trustee in bankruptcy. The trustee having brought suits against the garnishees, they made demand on the creditor on his bond of indemnity, which he had given them, and he subsequently settled such suits by paying over to the trustee the amounts he had received. He then proved his claim against the estate in bankruptcy, and asked to be restored to his lien on the fund received from the stock exchange. Held, that having acted apparently under a mistake of fact, by which no one had been prejudiced, he was equitably entitled to such relief.

4. SAME—ENFORCEMENT OF LIEN GIVEN BY RULES OF STOCK EXCHANGE.

Where the rules of a stock exchange, which give members a lien for debts due them from a defaulting member upon the proceeds of his seat, by proving their claims before a committee while the fund remains in their hands, do not expressly assume to make the remedy by so proving the claims exclusive, a court of bankruptcy, when equity requires it, may properly recognize and enforce such lien after the fund has come into its possession.

5. SAME—ADVERSE CLAIMS—ALLOWANCE OF INTEREST AGAINST TRUSTEE.

Where a creditor of a bankrupt entitled to a lien upon a particular fund, through oversight or mistake, waived his lien, and permitted the

fund to be paid over to the trustee without objection, but thereafter
asserted his lien in the bankruptcy court, and the trustee merely re-
tained the fund until the courts should determine to whom it belonged,
although in his official capacity he took an appeal to settle a matter
of substantial doubt, the creditor on establishing his right is not en-
titled to interest, it not being shown that any was received by the
trustee.

Appeal from and Petition for Revision of Proceedings in the Dis-
trict Court of the United States for the District of Massachusetts.
See 111 Fed. 503; 113 Fed. 202.

Freedom Hutchinson, for appellant.
Roland Gray and Robert S. Gorham, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, Dis-
trict Judge.

PUTNAM, Circuit Judge.   These cases relate to proceedings in the
district court for the district of Massachusetts, sitting in bankruptcy,
with reference to questions between the trustee of E. C. Hodges &
Co., in bankruptcy, and Otis, Wilcox & Co.   The leading facts are
well stated in the opinion of the learned judge of the district court,
as follows:

"Wilcox, a creditor of the bankrupt, sued him and garnished Post & Flagg
less than four months before the filing of the petition.   Thereafter he pro-
ceeded to judgment, took out execution, and collected from Post & Flagg the
amount due him from the bankrupt, in the belief that it had been duly
recovered under a valid garnishment, and that there had thus been effected
a full settlement of the judgment rendered against the bankrupt.   The
judgment was entered satisfied.   At that time Wilcox knew that bankruptcy
proceedings were pending, and that Swift's trustee claimed the debt owed
by Post & Flagg.   As Post & Flagg had been informed of the bankruptcy,
they took a bond from Wilcox to indemnify them in case of loss.   Still later,
Wilcox was notified that the bankrupt's seat in the New York Stock Ex-
change had been sold.   The rules of the exchange gave Wilcox a lien upon
the proceeds of the seat for the amount of the bankrupt's debt to him, and
he was invited to prove his claim against the bankrupt in the manner pre-
scribed by the rules.   To this notice he replied that he had already made a
settlement with the bankrupt, and that he relinquished whatever claim he
had against the bankrupt's membership.   The trustee brought suit against
Post & Flagg to recover their debt to the bankrupt's estate.   As the gar-
nishment made by Wilcox was void under section 67 of the bankrupt act,
the payment by Post & Flagg to Wilcox did not avail them to resist the
trustee's suit.   Wilcox was called upon under his bond of indemnity, and
agreed with the trustee that the trustee's suit against Post & Flagg should
be settled by the payment by Wilcox of the money due the trustee from
Post & Flagg.   The payment was made, and the trustee received and ap-
plied the same in full settlement of his suit.   Wilcox now seeks to prove
against the bankrupt's estate, and to reinstate his lien upon the proceeds of
the bankrupt's seat in the stock exchange which have been paid over to
the trustee."

This statement, however, requires to be supplemented by a few
additional facts.   There were two garnishee suits instead of one, each
standing on the same basis.   The bankrupts, who are residents of
Massachusetts, made a voluntary assignment for the benefit of cred-
itors on December 26, 1899.   Otis, Wilcox & Co., who are residents
of Illinois, and therefore not affected by the assignment so far as as-

sets beyond the jurisdiction of the state of Massachusetts were concerned, brought trustee suits, as explained by the learned judge of the district court, in Illinois and New York, on the same day that the assignment was made. The petition in bankruptcy was filed against E. C. Hodges & Co. in the district of Massachusetts on April 6, 1900. They were adjudged bankrupts on the 27th day of the same month of April, and Mr. Hutchinson was appointed trustee on the 23d day of the following May. The agreed statement which we find in the record, referring to the amounts which Otis, Wilcox & Co. received by virtue of their garnishee suits, says that they received them in the belief that they had been duly recovered under valid attachments, and that thus there had been effected full settlements of their judgments against E. C. Hodges & Co. It is true it also states that Otis, Wilcox & Co. received the proceeds of their judgments knowing of the pendency of the bankruptcy proceedings against E. C. Hodges & Co., and knowing that the trustee in bankruptcy claimed that the garnishees were liable to pay to him the debts covered by the garnishments. These statements, however, need explanation.

Under the bankruptcy act of 1867, with its amendments, the transfer of the bankrupt's assets was accomplished by a formal assignment, executed by the district court or the register in bankruptcy. That assignment, on its face, related back to the date of the commencement of proceedings in bankruptcy, and expressly stated what that date was; so that any person informed of the assignment was thereby informed of this essential fact. Under the present act there is no formal assignment, but merely an order, which fails to state the date of the commencement of the proceedings, and therefore necessarily fails to make known that the transfer of the assets of the bankrupt relates to that date. Otis, Wilcox & Co., so far as the record is concerned, received their knowledge of the pendency of the bankruptcy proceedings, and of the claim of the trustee that he was entitled to the debts which they had garnished, by letters sent by the trustee to the garnishees, or one of them, under date of May 28, 1900. These inclosed copies of the appointment of Mr. Hutchinson as trustee, but, so far as the record goes, they gave no information as to the date of the commencement of the proceedings. On April 27, 1900, the garnishee suits of Otis, Wilcox & Co. had been running four months, so that their claims were then apparently secured; and, so far as the case shows, never, until after the collection of their judgments in the garnishee suits, were they informed that the proceedings in bankruptcy were commenced in the early part of that month. The record does not expressly state whether the belief of Otis, Wilcox & Co. as to the status of the garnishee suits was based on a mistake of law, or on a mistake of fact arising through ignorance of the date when the proceedings in bankruptcy were commenced. Inasmuch as, on one of the proceedings before us, we are limited to "matter of law," it is fortunate that we do not find it necessary on this point to make a finding of fact. We reach this conclusion as the result of putting an interpretation on the record. We would not be justified, in the absence of a necessary conclusion to

that effect, in finding, to the prejudice of a resident of the United States, that he was ignorant of the laws thereof. Therefore, as the record leaves the matter open, we are bound to conclude that, in all the proceedings which it is necessary for us to consider, Otis, Wilcox & Co. acted under a mistake of fact, and not a mere mistake of law, although it is settled beyond question that parties acting under a mistake of law will not necessarily be held to that mistake by a court of bankruptcy when the result would be to do substantial injustice.

In this connection we ought to observe that whatever mistake Otis, Wilcox & Co. made has not resulted to the prejudice of any one, that no one has relied on it in such way that he would now be harmed by its being corrected, and that the trustee cannot build up any estoppel thereon, because, as we said in Hutchinson v. Le Roy (C. C. A.) 113 Fed. 202, a trustee in bankruptcy, like all other representatives of insolvent estates, takes only the equities of the bankrupt.

Within the year limited by the statute for proof of claims in bankruptcy, Otis, Wilcox & Co. filed a proof which failed, in very substantial particulars, to comply with the general orders of the supreme court in reference to such matters. Subsequently, after the expiration of the year, they filed a substituted proof of a claim, alleged to be secured in part by that portion of the proceeds of the sale of the seat of the bankrupts in the New York Stock Exchange which had been paid over to the trustee. Previously they had filed a petition that the court should direct the amount so received by the trustee to be paid to them. After a full hearing of the case, the court, on November 4, 1901, entered the following decree:

"At Boston, in said district, on the fourth day of November, A. D. 1901, upon the question certified to the court by the referee in said matter, on the 1st day of August, A. D. 1901, now, therefore, after hearing arguments of Freedom Hutchinson, trustee, and of R. S. Gorham, Esq., of counsel for Otis, Wilcox & Company, creditor, and after due consideration of the same, and the said Otis, Wilcox & Company having filed, by consent of the trustee, an amended proof of claim to be substituted for the proof annexed to their original petition, it is hereby ordered and decreed that the judgment of the referee be reversed, and that the said substituted proof be allowed, and that the trustee pay to Otis, Wilcox & Co. the balance of the proceeds of the seat in the New York Stock Exchange, to the amount of $4,091.28, on account of their claim, and that for the remainder they may be admitted to receive dividends; and it is further ordered and decreed that Otis, Wilcox & Co. pay to the trustee three hundred dollars paid by him to counsel in suit against Post & Flagg, and recover no costs of these proceedings."

This decree covers two subject-matters: First, an allowance of the substituted proof of a claim partly secured; and, second, a judgment that the trustee pay to Otis, Wilcox & Co. the balance of the proceeds of the seat in the exchange which he had received. The result is that we have pending before us with reference to that decree both an appeal and a revisory petition. Among the errors assigned on the appeal is that the court below erred in allowing the substituted proof. This, of course, raises a question which properly comes before us on appeal. The substance of the other errors assigned is that Otis, Wilcox & Co. are not entitled to any lien on the money received by the trustee on account of the seat in the ex-

change. This, of course, raises a question which comes before us only on the petition.

Heretofore, when we have had before us an appeal and a simultaneous revisory petition, with regard to proceedings by the district court which were supposed to be on its bankruptcy side, we have assumed that each had reference to supervision in the appellate tribunals in accordance with section 57 of the bankruptcy act of July 1, 1898. The first instance of this kind was in Re Worcester Co., 42 C. C. A. 637, 102 Fed. 808, decided by us on April 20, 1900. Then there was no question that the proceedings before us arose under section 57, because nothing was involved except a proof of debt and a priority in bankruptcy. In subsequent cases we have assumed that all the proceedings were taken by virtue of section 57, because the parties themselves so assumed; but such instances have now become so numerous that we deem it necessary to express ourselves in a cautionary way, in order that it may not be accepted that we have determined anything on that particular point. In Hutchinson v. Le Roy, already referred to, the question was one of an adverse claim on the part of Le Roy to a fund in the hands of the trustee, and the substantial question in the proceedings now before us is of the same character. We wish merely to say that we have not determined, and we do not now determine, whether such claims arise strictly on the bankruptcy side of the district court, or should be regarded as within the rules governing summary intervening petitions against a fund in the registry of a court, or in the hands of its officers or appointees, whether the court be one of equity, bankruptcy, admiralty, or even sitting at common law. We reserve all such questions for determination at some future time, when they have been raised by parties and it becomes necessary to pass on them. They are of a substantial character. With reference to a proceeding in the district court in the nature of a summary intervening petition under general juridical rules, and not controlled by section 57 of the bankruptcy act of July 1, 1898, an appellate tribunal would not be limited to matters of law, and it could pass on the entire merits, as on other ordinary appeals concerning such petitions. Moreover, under those circumstances, the right to an appeal to the supreme court from the circuit court of appeals might depend on the statute establishing the latter court, and not on anything found in the statutes of bankruptcy.

We now come to the appeal. The only ground to which it can relate is the objection to the substituted proof because it was not filed within the year limited by the terms of the statute. This, however, is easily disposed of. Courts of bankruptcy, like courts of admiralty, permit amendments with a most liberal hand; and as there was enough in the original proof by which to amend, and as the district court thought it was equitable to allow the amendment, the appeal cannot be maintained. In addition thereto, it may well be observed that the provision of section 57 of the bankruptcy act of July 1, 1898, which limits the time for proving claims, reads as follows:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the

expiration of such time, then within sixty days after the rendition of such judgment."

If the statute is to be construed in the same spirit in which other remedial statutes are, and not in a literal way, there might be reason for holding that this provision, extending the time for proof with reference to claims "liquidated by litigation," reaches every case in which a question arises, and which comes into a judicial tribunal within the year limited, if the question, in any manner, involves the determination of the net amount for which the claim shall be finally allowed. In any event, the appeal cannot be sustained.

Coming now to so much of these proceedings as relates to the right of Otis, Wilcox & Co. to the amount remitted by the New York Stock Exchange to the trustee, we wish to observe, first of all, that the trustee relies on the fact, as stated by him, that Otis, Wilcox & Co., having given indemnity to the garnishees, settled the trustee's claims against them by themselves paying the trustee; so that the trustee seems to understand that, inasmuch as Otis, Wilcox & Co. did not repay to the garnishees the amounts collected from them, the transactions growing out of the garnishments were not annulled. But it is not necessary to state with detail the various propositions pro and con relating to these transactions, because the law does not look at the mere form of effecting restitution. The ultimate result was that Otis, Wilcox & Co. received nothing by their proceedings against the garnishees; and, inasmuch as they acted under a mistaken belief of fact, it follows, according to the well-settled rules of law, that all their transactions with which the record is incumbered went for naught, and that, therefore, in the eyes of the law, everything stands precisely as though they had taken no steps whatever. The law itself restores the prior condition, without any resort to the peculiar remedies of the chancery courts, or to any other formalities whatever, except, merely, that it was necessary that Otis, Wilcox & Co. should advise the parties concerned that they reclaimed their original position.

Of course, if, meanwhile, any individual or official, relying on the notice given by Otis, Wilcox & Co. to the exchange that they made no claim on the proceeds of the bankrupt's seat, had done, or omitted to do, anything, so that he would have been prejudiced by the effect of a subsequent reclamation by Otis, Wilcox & Co., further examination of this point would be required; but we have seen that there is nothing of this kind. So, also, if Otis, Wilcox & Co. had executed to the exchange, or to the trustee, or to any one else, a formal instrument under seal, releasing or transferring any right, it might be necessary to ask a chancery court, or the district court exercising its equity powers, to decree a cancellation. That such a decree would unhesitatingly be conceded, in the event the rights of no other persons had meanwhile intervened, is so well settled that we need not dwell on the point. Indeed, even where, under a mistake, mortgagees have discharged mortgages of real estate on the public records in the most formal manner, chancery has not hesitated to order cancellation. We refer to this, not because any such special remedy is needed in the case at bar, as we have said it is not, but for the purpose of illustrating the underlying principle. In lieu of a formal re-

lease or assignment, what appears in the record is only the following letter from a gentleman representing Otis, Wilcox & Co. to the New York Stock Exchange:

"Chicago, Aug. 25, 1900.

"I am in receipt of your favor of the 23d, requesting my appearance before the committee on admissions on Thursday, the 30th, at twelve o'clock, to substantiate our claim against E. C. Hodges.

"With regard to this claim, we wish to say that we have made a settlement, and relinquish whatever claim we had against Mr. Hodges' membership. Kindly communicate the above to committee on admissions, and oblige,

"Yours very truly,      J. E. Otis, Jr."

Although not directly so stated, the letter makes it plain that the condition of the relinquishment of the exchange was that Otis, Wilcox & Co. understood that they had made a full settlement of the debt which E. C. Hodges & Co. owed them. Therefore, as there was merely this letter of advice, the law itself, without the aid of the equity courts, could, and, on Otis, Wilcox & Co. discovering their mistake and making their claim on the trustee, did, annul all their prior proceedings, and restore all the same rights as though such proceedings had not taken place. Therefore we have no occasion to discuss the proposition that no man is entitled to the aid of courts of equity when that aid becomes necessary through his own fault, because, in the first place, it is too broad in any view, in that it is among the highest prerogatives of those courts to accomplish justice sometimes in behalf even of one who has been imprudent, and because, in the present case, as we have said, the restoration of the rights of Otis, Wilcox & Co. was effected without the aid of any of the special remedies to which chancery is accustomed.

The only substantial doubt is raised by the constitution of the New York Stock Exchange, extracts from which are found in the record. These are susceptible of such a construction as to bar any lien in favor of a member of the exchange who does not prove his claim to its committee named in the constitution. They are, however, equally susceptible of a different construction; and, inasmuch as their substantial purpose is to secure other members against a defaulting member by a lien on the proceeds of his seat, we ought, in the absence of clear language to the contrary, to adopt such an interpretation as accomplishes that intent. Appreciating the fact that the New York Stock Exchange, like other similar exchanges in the great commercial marts, is, so to speak, "domestic" in its character, and reserves to itself the determination of all questions arising between its various members so far as it is practicable and lawful so to do, we perhaps would decline to interfere in the disposition of this fund if it still remained with the exchange. But, after the exchange had parted with it, the possibility of its taking jurisdiction in reference thereto ceased, and we do no injustice to any one, and do not interfere with any "domestic" policy, by now substituting ourselves in place of its committee. We are encouraged in this, if not fully sustained, by the expressions in Clews v. Jamieson, 182 U. S. 461, 495, 496, 21 Sup. Ct. 845, 859, 45 L. Ed. 1183, with reference to the rules of the Chicago Stock Exchange, although it is true that the rules there referred to related to the adjustment of accounts between its members, and not to the particular topic which we have before us. The opinion says:

115 FEDERAL REPORTER.

"The sales were made subject to the rules referred to, but, so far as regards a remedy for their violation, those rules provide a means by which parties may seek and obtain relief in accordance with their terms. They do not assume to exclude the jurisdiction of the courts, or, in other words, they do not assume to provide an exclusive remedy which the parties must necessarily follow, and which they have no right to refuse to follow without violating such rules, and thereby violating their contract."

So, in the present case, we may well say that, inasmuch as the extracts from the constitution of the exchange before us do not "assume to exclude the jurisdiction of the courts," or "assume to provide an exclusive remedy" because they contain no express terms to that effect with reference to the existing circumstances shown by this record, we may now justly adjudicate in reference hereto. Consequently we hold that Otis, Wilcox & Co. had a lien and equitable security on the fund while it was in the hands of the exchange, that the rules of the exchange did not interpose any limitation of time, that their rights thereto were only intermitted and not lost, and that their lien followed the fund into the hands of the trustee in bankruptcy, so that the decree of the district court in that respect was correct.

The parties have raised before us no question with reference to interest on the fund in issue, but we find it necessary to consider it. Ordinarily, an appellant, or other party, who has postponed by a proceeding in an appellate tribunal the payment of an amount justly due, should pay damages therefor equal, at least, to legal interest, even if he has not received any increment of the fund corresponding thereto. In Hutchinson v. Le Roy (C. C. A.) 113 Fed. 202, already referred to, we allowed interest against the petitioner; but there the fund which it was determined belonged to him had been held adversely from the outset, as it grew out of a tort of the bankrupt which arose before proceedings in bankruptcy were commenced. In the present case, however, the fund came into the hands of the trustee in bankruptcy, not through any tort, but through the oversight of Otis, Wilcox & Co. The trustee merely held it until the courts could determine to whom it belonged, and the record does not show that the trustee has received any increment thereof. Under the circumstances, and as this appeal was taken by the trustee in his official capacity to settle a question involving substantial doubts, we think that interest should not be allowed. We have discussed the matter of interest under circumstances of like special character in New England R. Co. v. Carnegie Steel Co., 21 C. C. A. 219, 75 Fed. 54, 59, and in The H. F. Dimock, 23 C. C. A. 123, 77 Fed. 226, 239, 240. In New England R. Co. v. Carnegie Steel Co., the fund was, for a portion of the time, held under conditions analogous to those at bar, in that it was in the hands of the court. So far as that period was concerned, we followed Thomas v. Car Co., 149 U. S. 95, 116, 13 Sup. Ct. 824, 37 L. Ed. 663. For the remaining period the fund was in the hands of the New England Railroad Company, having been transferred to it by the order of the court, and as that corporation took out the appeal, which was decided against it, we awarded interest from the time it was taken.

In No. 415 (Hutchinson, Trustee, Appellant, v. Otis, Wilcox & Co., Appellees) the decree of the district court allowing the appellees' proof

of claim is affirmed, and the costs of appeal are awarded to the appellees.

In No. 416 (Hutchinson, Trustee, Petitioner) the decree of the district court directing the payment by the trustee to Otis, Wilcox & Co. of $4,091.28 is affirmed, without interest, the costs on the petition are awarded to the respondents, and the district court is directed to give effect to this decree, both as to debt and costs.