### In re PEABODY.

(Circuit Court of Appeals, First Circuit. July 29, 1902.)

No. 428.

**1. RESULTING TRUST—PAYMENT OF CONSIDERATION FOR CONVEYANCE—INTENDED TRUST IN FAVOR OF THIRD PARTIES.**

A woman purchased real estate, paying the purchase money, and stating to the vendor that she intended it for the benefit of her grandchildren, which was in fact her intention. The vendor, without her knowledge, had the deed made to her daughter, the mother of the grandchildren. On the advice of the vendor she accepted the deed. She took possession of the property, received the rents, and paid the taxes, and held such possession exclusively for a number of years prior to the bankruptcy of her daughter. *Held,* that a trust in her favor resulted from her payment of the purchase money, any presumption to the contrary from the fact that the grantee was her daughter being rebutted by the facts shown, and that neither the daughter nor her trustee took any interest which would defeat such resulting trust, whether or not a trust in favor of the grandchildren was enforceable.

**2. SAME—TRUST RAISED ON A TRUST**

It being shown that it was the intention of the purchaser to retain in herself the possession and control of the property, her intention to devote the same entirely to the use and benefit of her grandchildren, even if it gave them an equity which they could enforce, would not defeat the trust resulting from her payment of the purchase money, since in such case one trust may be raised upon another.

Petition for Revision of Proceedings of the District Court of the United States for the District of Massachusetts, in Bankruptcy.

See 112 Fed. 129.

Robert D. Weston-Smith (Charles Walcott, on the brief), for petitioner.

Edward J. Baker, for respondent Lucinda B. Sullivan.

Before COLT and PUTNAM, Circuit Judges.

PUTNAM, Circuit Judge. This case arose out of an adverse proceeding commenced in the district court against Peabody, as trustee in bankruptcy of Mrs. Lillian Davis, to compel a release by him, as such trustee, to the petitioner, of certain parcels of real estate, the title to which was in the name of the bankrupt. No objection was taken in the district court on the question of jurisdiction, but both parties proceeded to present the merits of the case, and assented to the court taking full control thereof. The decision being against the trustee in bankruptcy, he commenced this proceeding as an original one in the form of a revisory petition under section 24b of the act establishing a uniform system of bankruptcy, approved July 1, 1898. Neither party has questioned the propriety of this proceeding, and both have gone to a hearing on the merits before us without raising any issue of jurisdiction. Consequently, we accept jurisdiction, reserving what we said on that topic in Hutchinson v. Otis (decided by us May 22, 1902) 115 Fed. 937. What we there said is re-enforced by the opinion

of the circuit court of appeals for the Seventh circuit in Walter Scott & Co. v. Wilson, 115 Fed. 284, where it was held that an adversary proceeding of this character is in the nature of a bill in equity, from which an appeal can be taken under the provisions of the statute establishing this court.

The proponent in the district court was Mrs. Lucinda B. Sullivan, the mother of Mrs. Lillian Davis. It appearing that the children of Mrs. Davis—the grandchildren, therefore, of Mrs. Sullivan—had a possible interest in the question, the petition in that court was amended, making them parties. As already said, this prayed that the trustee should release certain parcels of real estate described therein, and the court entered a final decree accordingly.

The important facts are as follows: Mrs. Sullivan bought the estate in question in May, 1895, and, so far as any payments have been made towards it, they were made by her from her own funds. The purchase was from one Brown. In her conversations with him before the purchase she told him she was acquiring the property for her grandchildren, and especially for the purpose of giving them a collegiate education. Such, in fact, was her intention. The grandchildren were then respectively about eight years and four years old. Mrs. Sullivan requested Brown to meet her at the registry of deeds with the deed, where the purchase money was to be paid. Brown, knowing that the grandchildren were children of Mrs. Davis, of his own motion, and without the knowledge of Mrs. Sullivan, had caused the deed to be drawn from himself, as grantor, to Mrs. Davis. When Mrs. Sullivan and Brown met at the registry, she first learned that the deed was made to Mrs. Davis. She then said to Brown that she objected to Mrs. Davis appearing as grantee; that she did not intend that Mrs. Davis should have any interest in the property; and that she was buying it for her grandchildren, and especially for the purpose of giving them an education. She also said that she wished some kind of a "trust deed," but she had no correct idea what such a deed is. Brown replied that it would cost her something to have the deed drawn over again, and that it would be better to leave it as it was; and it so remained.

Mrs. Sullivan had no conception of the technical meaning of the words "equitable estate," yet she intended the property for her grandchildren's benefit in some sense. Nevertheless, a fair construction of the record is that she did not intend that they should have an interest which they could assert by law, but that her purpose was to use, in a general way, the property for their benefit, meanwhile reserving to herself the right to control it. The record at one point states that she never intended to take any title, legal or equitable; but this is clearly a slip, and must be rejected.

After the conveyance was made, Mrs. Sullivan took possession of the property, and she has since had the exclusive care and control of it. She let it to tenants, received the rents, paid all the taxes, $100 towards a new sidewalk, the interest on mortgages resting on the property when she purchased, and portions of the principal thereof, and generally did all those things which the owners of real estate

naturally and properly do. She retained the deed in her possession until it was abstracted therefrom by Mrs. Davis, or her husband, without her knowledge. There are other matters which are shown by the record, but all subsequent to the purchase, and of such a kind that, by all the leading authorities relating to the rules for establishing or defeating alleged resulting trusts, they cannot affect the interests of the parties hereto; and we have no occasion to consider them.

There is sufficient in what we have said to overcome those presumptions arising from the fact that Mrs. Davis was the daughter of Mrs. Sullivan, which commonly rebut the existence of the usual resulting trust. In this case, also, we have not only the fact that the purchase money was paid by Mrs. Sullivan; but the further fact that she in all respects conducted herself, and was permitted to conduct herself, as the de facto and equitable owner of the property, by retaining possession of it and of its fruits, and its exclusive and absolute control. Thus there applies, not only the presumption of a resulting trust in her favor through her advancing the purchase money, but, also, that presumption arising from the well-settled practice of the equity courts, by the aid of which they apply the rule that what is agreed to be done is held to have been done. Sugd. Vend. (8th Am. Ed.) 270. Indeed, this undisputed possession and control have, according to the rules of equity, under the circumstances, the force of a formal declaration of trust by Mrs. Davis.

This control continued for more than five years,—that is, from the date of the purchase until the commencement by Mrs. Davis of the proceedings in bankruptcy in November, 1900; and, so far as the record shows, it has ever since continued. Under the circumstances, the rules of equity hold this fact of so much weight as to be practically conclusive against the assertion of an interest in Mrs. Davis. These rules are so well settled as not to require the citation of authorities; but the cases will be found grouped in Godef. Trusts (2d Ed.) 180. There is, apparently, a typographical error in the text, which explains itself, and which is further explained by reference to one of the cases cited,—Murless v. Franklin, 1 Swanst. 13, 19. Of course, the rules would not apply here if Mrs. Davis were a minor, but, she being of full age, they are of perfect effect. Therefore on this record there is no doubt that, as a matter of fact, Mrs. Davis never acquired any equitable interest in the property, or that the chancery courts would have interfered to prevent her controlling it contrary to any purpose of Mrs. Sullivan, or to compel her to release to Mrs. Sullivan on Mrs. Sullivan's request, if the bankruptcy had not intervened; and, as we have several times held, the equitable rights of a trustee in bankruptcy cannot rise higher than those of the bankrupt.

Neither have we any occasion to consider any question of relative rights as between Mrs. Sullivan and her grandchildren. The trustee in bankruptcy has no interest therein, and he is the sole petitioner before us. If the facts raised a proper trust in favor of the grandchildren, there would remain no doubt that the trustee had no interest which he could call upon us to protect. If, on the other hand, no proper trust was raised on their behalf, there could be nothing to

bring the case within the common rule that an express trust rebuts a resulting trust, because what is invalid in law is nothing in law, and an intention to create an express trust which is ineffective is a mere nullity. For this proposition it is not necessary to look further than the text-book which is a leading authority,—Hill, Trustees (4th Am. Ed.) 182,—where it is stated as follows:

"Where the trust is insufficiently or ineffectually declared, the effect would be the same as if it had not been declared at all; and a resulting trust will be decreed, provided that the imperfect declaration, though insufficient to establish the particular purpose contemplated, sufficiently prove it to have been the intention of the donor that the donee should in no event be entitled to the beneficial interest."

That the condition referred to at the close of this paragraph is complied with, in that it was not the intention of Mrs. Sullivan that her daughter, Mrs. Davis, should have any beneficial interest in the property in question, appears sufficiently from what we have already said.

Ample illustration of the rule thus stated by Mr. Hill will be found in Godef. Trusts (2d Ed.), beginning at page 168, and going through to page 176. Although many of the instances of resulting trusts there referred to arose otherwise than by payment of the purchase money, yet the principle involved throughout is precisely the same. At page 176, this authoritative text-book states the rule to which we have already referred, that "where there is a parol express trust of the purchase money, the resulting trust is rebutted"; but it completes the statement of the entire subject-matter, as applicable to the case at bar, where it says, on page 170, that, "if the trusts declared are too uncertain to be executed, but it is clear that the donees are to take as trustees, and not beneficially, the property results."

We may add that, even if the intentions of Mrs. Sullivan towards her grandchildren had been such as to raise an equity which they could have enforced, that would not have assisted the title of Mrs. Davis, or of her trustee in bankruptcy. There may be a trust raised on a trust; and, of course, the ordinary rule that an express trust bars an implied trust has no application merely because the purchaser, in whom the circumstances ordinarily vest the resulting trust, has an incidental intention which is entirely consistent with it. That is to say, where one forms the design of keeping a general control of property for the purpose of working out an advantage for some other individual or individuals, there is no such inconsistency as would rebut the right of such control, or any resulting trust which it may represent. Such is the condition of this case in the most favorable light that could be suggested for the trustee in bankruptcy. In other words, to repeat briefly: Even a trust arising in behalf of the grandchildren, if it had been an effectual one, would not be inconsistent with a resulting trust, because it would be built upon it. The record puts it beyond question that it was the intention of Mrs. Sullivan to control the property, and this was, in equity, entirely in harmony with all her other possible purposes.

This raising a trust on a trust is, by common consent, of acknowledged propriety. For example, there is no difficulty in devising an

estate in trust for the payment of the income to a father, with a further trust, imposed on the father, to apply a portion thereof for the education, or the other benefit, of certain of his children. The courts ingeniously avoided the statutes of uses by holding that a use could not be limited upon a use. This was, however, merely a rule of the common law, the equity courts holding that the second use was a trust. 2 Bl. Comm. 335, 336; 1 Greenl. Cruise, Real Prop. 382.

Both parties rely on Institution v. Meech, 169 U. S. 398, 18 Sup. Ct. 396, 42 L. Ed. 793. This citation, however, is not directly in point, but, so far as it has any bearing, it sustains the decree of the district court. Much of the opinion must be regarded as dicta, as the case was finally disposed of on the doctrine of election, which would have had sufficient application on the general principles of law, and had special application under the peculiar provisions of a will there in question. Therefore it is impossible to say whether all the justices of the supreme court concurred in all the reasoning which the opinion contains, and very little of it is binding on us within the rules stated by us in King v. Asylum, 12 C. C. A. 145, 64 Fed. 331, 340, and Foreman v. Burleigh, 48 C. C. A. 376, 109 Fed. 313, 314.

The record contains some special findings by the learned judge of the district court. The respondent raises some question whether they were properly made, but, inasmuch as without them the record would be so defective that the decree of the court below in favor of the respondent would necessarily be affirmed, we have considered the findings, without passing on the issue which the respondent makes in this particular.

There will be a decree confirming the decree of the district court, with costs on this petition for the respondent, and directing the district court to give effect to this decree, both as to the principal matter and the costs.

Judge WEBB sat at the hearing of this cause, but resigned before it was decided.