### SOLINSKY v. NEW YORK STOCK EXCHANGE et al.

#### In re WILSON et al.

#### (District Court, S. D. New York. August 27, 1919.)

BANKRUPTCY ⚖➙143(4)—STOCK EXCHANGE MEMBERSHIP.

  A bankruptcy trustee is not entitled to proceeds derived from selling the bankrupt's membership in the New York Stock Exchange until the bankrupt's dues to and debts within, the Exchange have been determined by the Exchange's committee and deducted.

In Bankruptcy. Action by Frank J. Solinsky, as trustee in bankruptcy of J. C. Wilson and others, against the New York Stock Exchange and another. Decree dismissing complaint without prejudice.

The complicated affairs of J. C. Wilson & Co. and some of the questions arising therefrom were discussed in 252 Fed. 631. Wilson was a member of the New York Stock Exchange and was a general partner of the firm of J. C. Wilson & Co. When the firm became insolvent in 1914, Wilson was suspended from membership in the Exchange. Before the period allowed to Wilson by the constitution of the Stock Exchange within which to settle with his creditors had expired, Wilson died, and the committee on admissions of the Stock Exchange thereupon disposed of his membership. The proceeds of the membership amounted to $68,500, out of which dues to the Exchange aggregating $294.37 were paid. The balance remaining was deposited by the Exchange with a trust company, and this sum, with accrued interest, is still held by the Exchange.

Harris, Winthrop & Co. is a partnership, some of whose general partners are members of the Exchange. On January 11, 1915 (i. e., after the insolvency of Wilson, but before the transfer of his membership), Harris, Winthrop & Co. filed a claim against the membership of Wilson with the committee on admissions of the New York Stock Exchange. The following is an extract of the substantial features of the claim:

"This firm had an account with J. C. Wilson & Co., of San Francisco, in which we bought and sold securities on the credit of J. C. Wilson & Co., up

to the closing of the Stock Exchange on July 30, 1914. J. C. Wilson & Co. then announced their suspension to the Stock Exchange. Thereafter * * * the partners of J. C. Wilson & Co., individually and as copartners, were adjudicated bankrupts. On the opening of the Stock Exchange this firm closed all outstanding contracts between it and Wilson & Co. under and according to the rules of the Stock Exchange. The result of the closing of said transactions was that the debit balance of J. C. Wilson & Co. to this firm was paid in full, and we hold for the account of J. C. Wilson & Co., or the trustee in bankruptcy of Wilson & Co., $11,999.80 in cash and the securities set forth in schedule A hereto annexed.

"Before we closed the account of Wilson & Co., various customers of Wilson & Co., with whom this firm had no dealings, made claims against us for the securities set forth in schedule B hereto annexed. * * * Since then, and on or about December 24, 1914, an action was begun by Louis Rosenthal against this firm, the New York Stock Exchange, and the president and officers of the New York Stock Exchange, to recover specific securities, or the proceeds thereof, amounting to $43,795. Various other customers of Wilson & Co. have made claims against this firm for the securities set forth in schedule C hereto annexed, on the ground that they are respectively entitled to the delivery of said securities on paying various amounts in cash. * * * If the various claimants against this firm are successful, the credit balance of J. C. Wilson & Co. with this firm would change to a considerable debit balance, the amount of which we cannot accurately state, on account of the facts above set forth. We are also subject to the risk of being obliged to deliver the cash and securities in our hands to the receiver of Wilson & Co. in bankruptcy, which would leave this firm without any protection against the claims of the customers of Wilson & Co., and compel us to look to the proceeds of the seat of J. C. Wilson & Co. for reimbursement in part or in whole.

"On account of the foregoing facts we hereby file a claim against the seat of J. C. Wilson & Co. and the proceeds thereof for an unnamed amount."

In due course, Frank J. Solinsky became the trustee in bankruptcy of Wilson et al.. and in 1916 he notified the Exchange to pay over to him the proceeds of the membership of Wilson. Mr. Winthrop, of Harris, Winthrop & Co., appeared before the committee on admissions, and, in substance, repeated the statements contained in the letter of his firm, and stated that he was unwilling to withdraw his claim against the proceeds of the membership of Wilson, and desired that the matter should stand over until his claim was in a position to be passed upon.

The plaintiff has brought this suit against the New York Stock Exchange and the members of Harris, Winthrop & Co. to recover the above-mentioned proceeds of the transfer of the membership in the Exchange formerly belonging to Wilson.

The constitution of the Exchange provides that a member of the Exchange may transfer his membership voluntarily, with the approval of two-thirds of the committee on admissions, and that when a member dies his membership may be disposed of by the committee on admissions. Likewise, when he is expelled or becomes ineligible for reinstatement, his membership shall be similarly disposed of. The constitution further provides that upon any transfer of a membership the proceeds thereof shall be applied to the following purposes and in the following order, namely:

"First. The payment of all * * * charges of the Exchange * * * against a member whose membership is transferred.

"Second. The payment of creditors, members of the Exchange, * * * of all filed claims arising from contracts subject to the rules of the Exchange, if, and to the extent that, the same shall be allowed by the committee on admissions. If said proceeds shall be insufficient to pay said claims, as so allowed. in full, the same shall be applied to the payment thereof pro rata.

"Third. The surplus, if any, of said proceeds, shall be paid to the person whose membership is transferred, or to his legal representatives, upon the execution by him or them of a release or releases satisfactory to the committee on admissions.

"The committee on admissions shall have power, by rule or otherwise, to secure the observance of the provisions of this article."

When a member of the Exchange becomes insolvent, he is at once suspended. If he fails to settle with his creditors and apply for reinstatement within one year, his membership is disposed of by the committee on admissions, unless the governing committee extends the time allowed to him for settlement of his creditors.

Contracts subject to the rules of the Exchange are defined by article XXII of the constitution as follows:

"All contracts of a member of the Exchange, or of a firm having a member of the Exchange as a general partner, with any other member of the Exchange, or with any other firm having a member of the Exchange as a general partner, for the purchase, sale, borrowing, loaning, or hypothecation of securities, or for the borrowing, loaning, or payment of money, whether occurring upon the floor of the Exchange or elsewhere, are contracts subject to the rules of the Exchange."

Harold Remington, of New York City, for trustee.

Carter, Ledyard & Milburn, of New York City (Walter F. Taylor, of New York City, of counsel), for defendant New York Stock Exchange.

Gifford, Hobbs & Beard, of New York City, for defendant Harris, Winthrop & Co.

MAYER, District Judge (after stating the facts as above). On the testimony in the case it is clear beyond question that the position which has been taken by Harris, Winthrop & Co. has been so taken in absolute good faith as a protective measure against claims which might be asserted prior to the expiration of the statute of limitations, which will be about August, 1920. While no claims have latterly been asserted, yet there is no assurance that some claim may not be made and pursued, and it was said in argument (and it is quite possible) that in a situation of this kind there is always at least a possibility of a last hour claim which might subject Harris, Winthrop & Co. to loss, and therefore they insist, as matter of right, that they should not be placed in any such situation by the payment over at this time to the trustee in bankrupcy of the proceeds of the Wilson membership.

The testimony in the case establishes that the uniform practice of the committee on admissions of the New York Stock Exchange has been to entertain claims filed against the proceeds of memberships by members of the Exchange based upon the liability of the claimants to respond to claims made against them by outsiders for securities received from the member whose membership has been transferred, or based on other matters of a similar kind. Each case, of course, has its own facts; and there is, therefore, the opportunity for counsel to draw some fine distinctions. But for all substantial purposes and in substantial respects the committee on admissions has pursued the uniform practice of postponing the consideration of the claim against the proceeds so long as the question of the liability of the claimants to the outsider remains open.

So far as this record shows, the trustee in bankruptcy has never made any application to the committee on admissions of the New York Stock Exchange to bring the claim of Harris, Winthrop & Co., on for

a hearing, nor have there been presented to the committee any facts showing or tending to show that the claims against Harris, Winthrop & Co., either have been extinguished or have been disposed of by a court of competent jurisdiction.

On the evidence it is entirely plain that the action in this case of the New York Stock Exchange, acting through its committee on admissions, is in strict accordance with its constitution and the practical construction thereof, as shown by uniform practice. It is vital that an association such as the New York Stock Exchange should exercise the most scrupulous care in the observance of its constitution and rules, for the members of the Stock Exchange necessarily rely upon the faithful adherence to such constitution and rules for protection in just such a situation as the facts here present. The suggestion that the action of the committee on admissions is arbitrary or without justification is wholly without merit. As stated by counsel for the New York Stock Exchange in his brief:

"The presumption is that, whenever the plaintiff is prepared to show the committee that there is no foundation for the claims of which Harris, Winthrop & Co. are apprehensive, or that claimants against them are estopped from the further assertion of their claims, or have elected inconsistent remedies, or that their claims are barred by the statute of limitations, or other similar facts, the committee on admissions will adjudicate adversely upon the claim of Harris, Winthrop & Co. and pay over the proceeds of the Wilson membership to the trustee in bankruptcy."

It is unquestionably the law that, when a member of the New York Stock Exchange has become bankrupt and his membership is transferred, his trustee in bankruptcy is not entitled to the proceeds of the transfer, but only is entitled to have paid to him the surplus remaining after the payment therefrom of his dues to the Exchange and his debts within the Exchange, as allowed by the committee on admissions. Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264; Belton v. Hatch, 109 N. Y. 596, 17 N. E. 225, 4 Am. St. Rep. 495.

It is also well settled that the action of the committee on admissions upon claims filed with it is necessary to the ascertainment of the amount of the surplus to be paid to the representatives of the former member, and is a condition precedent to any claim by such representatives against the Stock Exchange for such surplus. Stonebridge v. Smith, 55 N. Y. Super. Ct. 295; Hutchinson v. Otis, 115 Fed. 937, 53 C. C. A. 419; Id., 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179.

Much of what has been set forth supra, could have been omitted, in view of the controlling authority of In re Currie, 185 Fed. 264, affirmed on opinion below in 185 Fed. 265, 107 C. C. A. 369; but, in view of the earnestness with which plaintiff has pressed his contention, it has seemed desirable to consider the subject-matter somewhat fully. I have not failed to consider the various other arguments urged by plaintiff; but, when all is said, it seems to me that the Currie Case, supra, disposes of the suit at bar. I realize that the result will be that the ultimate winding up of the estate in bankruptcy will be postponed for a while, but that temporary inconvenience must give way to the rights of these defendants.

The complaint will be dismissed, with costs, without prejudice, however, to the right of plaintiff to bring such suit or action as he may be advised for the balance of the proceeds of the Wilson membership that remain in the hands of the New York Stock Exchange after the claim of Harris, Winthrop & Co. has been liquidated and has been passed on by the committee on admissions, and any amount allowed on such claim paid out of the proceeds of the Wilson membership. The suggestion that a decree in accordance herewith will indefinitely postpone the disposition of the fund is without merit, for the reason that undoubtedly the whole subject-matter must be disposed of at or prior to the end of August, 1920.

Submit decree on five days' notice.