SOUTH CHICAGO ELEVATOR CO. v. UNITED GRAIN CO.

UNITED GRAIN CO. v. SOUTH CHICAGO ELEVATOR CO.

(Circuit Court of Appeals, Seventh Circuit. July 22, 1908.)

Nos. 1,456, 1,458.

1. APPEAL AND ERROR (§ 846*)—REVIEW—ACTION TRIED WITHOUT JURY.

On review of a judgment in an action at law tried by the court without a jury, the law of the case must be determined from a finding by the trial court of ultimate facts in issue, and in the absence of such finding

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an ultimate fact cannot be supplied by the appellate court from evidence recited in the findings or findings of facts which are merely evidential in character.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 846.*]

2. CONTRACTS (§ 9*)—REQUISITES AND SUFFICIENCY—TIME OF COMMENCEMENT.

Plaintiff, an elevator company, and defendant, a company dealing in grain, after correspondence, met and agreed on a memorandum for a contract that plaintiff should store and handle in its elevators for one year grain delivered by defendant, to be not less than 5,000,000 bushels, at one-half cent per bushel. A few days later defendant commenced delivering grain, and for a year plaintiff continued to receive, store, and handle the same, with the understanding by both parties that it was done under the contract; plaintiff rendering bills at one-half cent per bushel from time to time, which were paid by defendant. A short time after the deliveries commenced the parties again met and agreed that a formal contract was not necessary, as they were then doing business under the contract, the terms of which were sufficiently shown by the correspondence and memorandum. During the year plaintiff reserved storage room for the full quantity of grain called for by the contract, but a smaller quantity only was delivered. *Held*, that the correspondence and memorandum contained all of the requisites of a complete contract, and that, in view of the fact that they were adopted as such after performance had been entered upon, it was immaterial that the parties did not therein fix any particular day on which the contract should go into effect.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 9.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The plaintiff below, South Chicago Elevator Company, sued United Grain Company in assumpsit, and recovered judgment in the Circuit Court, on special findings of fact by the trial court (a jury being waived), in favor of the plaintiff for the principal sum of $6,042.01. Review of such judgment is sought by each party under these writs of error, with No. 1,456 prosecuted by the plaintiff below, and No. 1,458 prosecuted by the defendant as a cross-writ; the plaintiff complaining of error in the conclusion of law against recovery upon express contract, and the defendant challenging the sufficiency of the findings of fact to support any recovery. The suit was brought to recover an alleged balance of $15,065.67 as due upon contract for handling and storage of grain for the defendant in the plaintiff's elevator, with a declaration consisting of the common counts and five special counts, to which the defendant filed pleas of general issue. The findings of the trial court, designated as "special findings of fact," are not limited to statements of ultimate facts, but set out correspondence and other recitals of evidence which enter therein. Such findings as are deemed material are sufficiently stated in the opinion.

The conclusions of law upon the facts found are thus stated by the trial court:

"(1) The court concludes, as a matter of law from the foregoing findings of fact, that no contract or agreement was entered into between the parties in the manner and form as alleged in any of the several special counts of the plaintiff's declaration.

"(2) The court having concluded as a matter of law that no express contract existed between the parties, for the reason that they did not agree upon a particular day when the plaintiff was to begin the elevation of 2,500,000 bushels of grain for the defendant, yet the plaintiff having elevated for the defendant, at its request, 2,119,957 bushels of grain during the year beginning September 12, 1904, and ending September 12, 1905, and both parties believing they had an express contract, although lacking the question of time when the same was to begin, the plaintiff is entitled to a reasonable compensation for the services performed, which the court finds to be three-fourths of a cent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

per bushel, amounting to $15,899.61, and while it rendered bills from time to time at one-half cent per bushel, which were paid by the defendant, the same amounting to $9,957.60, judgment will be entered by the clerk for $6,042.01, with 5 per cent. interest thereon, from the 19th day of October, 1905."

On behalf of the plaintiff a ruling was requested in its favor that "the plaintiff was entitled to a judgment upon the special findings of fact in the sum of $15,065.67" and interest, and upon denial thereof judgment was directed and entered in conformity with the conclusions above stated.

W. S. Oppenheim, for South Chicago Elevator Co.

Robert J. Cary, for United Grain Co.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The plaintiff, South Chicago Elevator Company, contends that facts are found and settled by the trial court which establish both the existence of express contract obligations between the parties, within one or the other special count of the declaration, and liability of the defendant thereunder for the principal sum of $15,065.67. Error is assigned for that cause under its writ, No. 1,456, and, if the findings are conclusive of such obligations under an express contract within the issues, the judgment must be reversed, as the recovery is not in conformity with either issue upon express contract and rests alone upon a quantum meruit finding. The sufficiency and effect of the findings of fact, under the issues, are the only questions arising for solution under this writ of error (No. 1,456); and, in the event of sufficiency in the facts found to establish express contract liability, no questions raised by the defendant under its cross-writ of error, No. 1,458, require consideration.

The controversy arises over these undisputed facts: Plaintiff corporation, operating elevators at Chicago, handled and stored for the defendant corporation all grain tendered by the defendant, amounting to 2,119,957 bushels 48 pounds, during a period of 12 months, commencing September 12, 1904, under a supposed contract to receive and handle during the year a minimum amount of 5,000,000 bushels, at one-half cent per bushel. Bills were rendered from time to time, at that rate, for the grain received, and the defendant paid thereupon the aggregate sum of $9,957.60. The plaintiff provided storage room and means to handle 5,000,000 bushels, as contemplated, and at the close of the year demanded payment by the defendant of $15,065.67, as the amount due under the alleged contract, after crediting the payments so made, for which recovery is sought under the declaration, consisting of the common counts and special counts upon the alleged agreement. Although the defendant filed pleas of general issue, it clearly appears, as stated in the brief and argument submitted here on its behalf, that:

"The issue made between the parties at the trial of the cause was whether any contract had been entered into between the parties, in accordance with any one of the special counts."

The case was heard by the trial court, without a jury, and its findings of fact are special—including the circumstances and written evidence comprising the alleged contract—with conclusions of law stated

thereupon, substantially, that "no express contract existed between the parties, for the reason that they did not agree upon a particular day when the plaintiff was to begin the elevation" of grain for the defendant, and that the plaintiff is entitled to "a reasonable compensation for the service performed," fixed at three-fourths of a cent per bushel, amounting (after deduction for payments) to $6,042.01.

The question, therefore, whether the service was performed under and pursuant to express contract, binding between the parties, must be ascertained from these findings of fact. For the purpose of review, the rule is well settled that the law of the case must be determined from a finding by the trial court of ultimate facts in issue—its "finding of the propositions of fact which the evidence establishes, and not the evidence on which these ultimate facts are supposed to rest." Norris v. Jackson, 9 Wall. 125, 127, 19 L. Ed. 608; 7 Notes U. S. Rep. 148; Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 127, 22 Sup. Ct. 55, 46 L. Ed. 113. So any inferences of fact to establish an ultimate fact in issue cannot be supplied by this court from evidence recited in the findings of facts which are merely evidential in character and not final, in the absence of a finding by the trial court of the ultimate fact. We are of opinion, however, that the facts upon the issue under consideration are settled by the findings within the foregoing rule. Written communications between the parties are set out therein, bearing date from August 27 to September 6, 1904, which contain their respective negotiations and propositions for handling and storing grain for a year, with acceptance by the plaintiff of the defendant's proposition, thus stated in the plaintiff's letter of September 6th:

"We therefore accept your proposition to handle your grain at one-half cent per bushel, the minimum amount to be handled during the year to be 5,000,000 bushels. We should be glad to commence business with you at your earliest convenience."

Thereupon it is distinctly stated and found, in substance, that the parties met personally, prior to September 6th, and arranged for a subsequent meeting to settle the terms of a contract, and within 10 days after that day met and "agreed upon the following memorandum of agreement, which they at the same time and place agreed should be subsequently put into a formal written contract," setting out the memorandum, which contains minor provisions for service not in controversy, and fixes "one-half of a cent per bushel" to be paid for elevation of the grain and 5,000,000 bushels as the minimum amount to be handled in the year. The meaning of these provisions in memorandum and letter is not only clear, but uncontroverted. It is further stated and found that the principals met in December, 1904, and that "it was then agreed between them, acting for the parties to this suit, that it was unnecessary to reduce the agreement to a formal written contract, as they were doing business under the contract and had an abundance of letters and memorandum to show what had been agreed upon; * * * that shortly after the receipt of the letter" of September 6th, above mentioned, the defendant proceeded to deliver the grain in question, "and on the 12th day of September, 1904, the plain-

tiff began" its service under the alleged agreement, and so continued "for the whole period of 12 months"; and "that both the plaintiff and the defendant believed a contract existed between them, which contract was evidenced by letters and memoranda" set forth.

The facts thus found are the ultimate facts under the issue, whether an express contract existed between the parties—not merely evidential facts, which leave an inference of fact to be determined, as contended on behalf of the defendant—and are thus plainly distinguishable from the findings involved in Wilson v. Merchants' Loan & Trust Co., supra, cited and discussed in the brief for the defendant. They settle, as we believe, (a) that all terms of the proposed contract for delivery and storage of the grain in question are set forth in these letters and written memorandum; (b) that the parties met and agreed thereupon as their contract; and (c) that the plaintiff's service in suit was in performance thereof. With facts so found, the only deductions to be drawn under that issue were conclusions of law, either as to the validity of the agreement or interpretation of the written instruments thus agreed upon. The findings, however, further recite written communications between the parties, during October, 1904, when storage was in progress, which we omit from the foregoing summary of the contract provisions as found, for the reason that they do not enter into or affect the terms of service found to be agreed upon. They are obviously included in the findings to make complete and definite the statement of the subsequent (December) agreement of the parties, as found, to let their "letters and memoranda show what had been agreed upon," and not "reduce the agreement to a formal written contract." Thus the October communications are made part of the written instruments tendered by the parties as forming their contract, for construction in conformity with their legal import as an entirety, with no inference of fact unsettled.

It is contended, on behalf of the defendant, that one of the letters referred to, written by the defendant October 14th, proposes terms to be "embodied in the contract" which differ in some particulars from the memorandum of terms agreed upon in September, and (in effect) that it is not expressly found whether this subsequent proposal was or was not agreed upon, thus leaving the actual terms uncertain. But this contention is without force, as we believe, under the above-mentioned express finding that both parties theretofore agreed upon the September memorandum as containing the contract terms for performance, and proceeded accordingly. So neither party could introduce change in such terms, nor create uncertainty in the contract, by his subsequent request or suggestion thereof, without consent of the other party—laying aside any question of new consideration—and, with no finding of express or implied consent to the new terms proposed by the defendant, such proposal is without legal effect in ascertaining the contract terms upon which the parties agreed, as found by the court.

The issues of fact, therefore, upon which the controversy hinges are settled by these findings, establishing as well the intended contract terms within the special counts of plaintiff's declaration, and the fact

that the parties mutually agreed thereupon, as their contract for elevator service for a year; moreover, that both proceeded in performance thereof upon the understanding that such was their contract. The further inquiries remained: (a) Whether such agreement of the parties became obligatory as their contract; and, if so, (b) what were those obligations—questions of law, purely, and not of fact, under such findings. As the terms so found are plain and unambiguous, with no question of interpretation raised, the ultimate question for solution is whether the trial court erred in its conclusion of law "that no express contract existed between the parties, for the reason that they did not agree upon a particular day when" elevation of grain was to begin. The fact that neither letters nor memorandum recited in the findings state any date for commencing delivery or storage is both obvious upon their face and stated as a finding of fact; and this conclusion of law rests upon the following statements at the close of the findings of fact:

"(16) That no specific day was agreed upon by the parties whereon was to begin the elevation and storage of grain at said Elevator D.

"(17) That the minds of the parties did not meet on the question of time as to when the year was to begin."

It does not appear upon what theory or provision of law this fact of omission to specify the day of commencing operations was deemed by the trial court either material under the agreement found or cause for its conclusion of law thereupon. That both finding and conclusion refer alone to such omission in the written evidence of terms, which preceded the commencement of deliveries and service thereunder, is unmistakable; and we believe the effect of the oral agreements subsequently made, as found, must have been overlooked in any view of the requisites for validity of the contract which may have been entertained. The contention of counsel in support of the conclusions of law, that the foregoing findings (16 and 17) must be accepted as decisive that the "minds of the parties did not meet" upon the terms of a contract, notwithstanding the oral agreements expressly found, is plainly untenable, as we believe.

The reviewable question of law arises, therefore, whether the failure to specify a day for commencing performance before entering upon the service leaves no express contract between the parties under the established facts. Those facts are that there was no agreement upon a contract—no meeting of minds upon the terms—under the letters and memorandum alone, that the parties agreed upon the terms of service therein proposed in subsequent oral agreements, and that, when so concluded, each party had entered upon performance of such terms, and they mutually agreed that no "formal written contract" was necessary, "as they were doing business" under such written terms. The preliminary writings were thus adopted as evidence of contract terms; but no express contract arose until their oral agreements were reached. As the time from which the contract was to run was then fixed, by previously commencing service (September 12th), no specification was needful, either written or oral, to make the agreement effective as a contract for the year thus defined. We

are of opinion, accordingly, that the findings of failure to specify such date are immaterial, and that the judgment must be reversed.

The facts found by the trial court, however, establish, not only the existence of a contract, but complete performance by the plaintiff of all its terms to be performed on its part. While the defendant delivered less than half the 5,000,000 bushels of grain for which elevation and storage was required under the contract, it is expressly found that storage room was reserved from other use in the plaintiff's elevator which provided for storage of the entire amount contracted for during the year, and (in effect) that its expenses necessarily incurred therein were the same for handling the amount of grain actually elevated and stored as would have been required for the entire 5,000,000 bushels so provided for. Thus all issues of fact are determined to authorize recovery by the plaintiff for such performance of the contract as an entirety, and to fix the amount recoverable therefor—namely, the principal sum of $15,065.67, as the balance of contract price found to be unpaid. If the trial court is satisfied, however, upon application for further hearing on the question of damages alone, that testimony tendered on that behalf may require correction of these findings as to elevation expenses, tending to reduce substantially the amount recoverable, testimony thereupon may be heard and supplemental findings be made in respect thereof, and of the amount of damages recoverable accordingly, within the foregoing rule.

The judgment is reversed, therefore, and the case remanded to the Circuit Court, with direction to enter judgment upon its findings of fact, in conformity with the foregoing opinion.