EDWARDS et al. v. BAY STATE GAS CO. OF DELAWARE.

(Circuit Court, D. Massachusetts. September 23, 1909.)

No. 230.

1. ATTORNEY AND CLIENT (§ 155*)—COMPENSATION OF ATTORNEY—ALLOWANCE FROM FUND IN COURT.

Where suits in equity, instituted on behalf of the bondholders and stockholders of an insolvent corporation, resulted, through the appointment of a receiver and suits instituted by him, in gathering a fund which made the defendant corporation solvent, leaving a surplus after paying its indebtedness, such fund, being purely equitable, is subject to the payment of equitable costs, including the fees and disbursements of the solicitors for the original complainants for services rendered up to the time of final decree.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 316; Dec. Dig. § 155.*]

2. ATTORNEY AND CLIENT (§ 155*)—COMPENSATION OF ATTORNEYS—ALLOWANCE FROM FUND IN COURT.

It is the general rule that the right to equitable costs, such as counsel fees, exists only with respect to a fund created by the services charged for; but where proceedings on behalf of bondholders by intervention, having a reasonable basis and which might have resulted in establishing the right of the interveners to a large sum as interest from a fund in the hands of a receiver, were compromised by a consent decree, which provided that the receiver should retain from the fund in his hands a sum sufficient to cover, inter alia, allowances to counsel for the interveners, the allowance of such fees from the fund must be taken as one of the terms of the compromise, and enforced as such, so that the interveners may receive the amount stipulated on their bonds without being subjected to a charge for counsel fees.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 316; Dec. Dig. § 155.*]

3. RECEIVERS (§ 163*)—PAYMENT OF CLAIMS—INTEREST.

On the allowance of counsel fees out of a fund in the hands of a receiver, interest will not be awarded beyond that obtained by the receiver on the fund.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 313; Dec. Dig. § 163.*]

In Equity. Suit by Jacob Edwards and others against the Bay State Gas Company. On application for allowance of counsel fees. Applications granted in part.

Whipple, Sears & Ogden, C. Godfrey Patterson, A. A. Folsom, Wm. F. Donovan, Morse & Friedman, Lee M. Friedman, Benj. L. M. Tower, H. M. Burton, J. H. Benton, Jr., H. H. Ward, Bancroft G. Davis, and Henry Major, for complainants.

Parker C. Chandler, Nathan Matthews, Homer Albers, Alfred S. Hall, and Tower, Talbot & Hiler, for defendant.

PUTNAM, Circuit Judge. The pending matters are applications for certain allowances to counsel and others from a fund which was gathered through the exercise of the equity powers of the Circuit Court of the United States for the District of Delaware, supplemented by ancillary proceedings in this court, all in suits against the Bay State Gas Company, a corporation created under the laws of the state of Delaware. We say proceedings against a fund gathered in the manner we have said, because, although the Delaware Gas Company, which

was insolvent when the proceedings commenced, but as a result thereof has become solvent, and has, therefore, been permitted to receive a large portion of the fund, is now defending against the claims in issue, and is the sole party interested to defend against them, yet sufficient of the fund remains still under the hand of the court to liquidate the claims here in controversy; and, further, both the portion of the fund which the Delaware Gas Company received, and all the portion remaining, are, and always have been, subject to whatever equities arose in connection with, and incidental to, or as a result of, the gathering of the fund by the equity powers of the courts. Consequently we expunge from the case every suggestion or argument based on the fact that the Delaware Gas Company is now defending against these claims, and is now the holder and owner of part of the fund; and we rest all the matters before us on precisely the same basis as though the whole fund were still in the registry of the court, or in the hands of the receiver. This will eliminate the necessity of further discussion of certain propositions connected with this topic stated by the counsel on both sides at considerable length.

The pending claims resolve themselves mainly into two classes: First, the claim of the counsel who initiated the proceedings, which is the first and the most substantial topic to be considered; and, second, the claims of the counsel who intervened for the purpose of securing complete liquidation with reference to the income bonds, so called, and the payment thereof.

The income bonds of the principal sum of $507,000 were the larger indebtedness of the corporation when these proceedings commenced. The entire indebtedness at that time is given by some of the counsel as exceeding $700,000, and the entire available assets as approximately $35,000. Assets were secured by the efforts of the receiver to the amount of approximately $2,000,000. This was accomplished without any assistance by the Bay State Gas Company, and very considerably by successful legal proceedings which met the hostility of its officers. The favorable results in this particular were at the end of very elaborate and difficult litigation, involving expenditures vastly beyond the pecuniary resources of the Bay State Gas Company. Without going further into details, and without undertaking to verify the figures, or to state them accurately, it is beyond question that, at the time proceedings were commenced, the Bay State Gas Company was not only utterly insolvent, but wholly unable to accomplish the favorable results which have been accomplished by the receiver, and utterly without hope or promise of any attempt in that direction. The ultimate end was that all the liabilities of the respondent corporation, including the income bonds, have been paid, the corporation made solvent, as we have said, and in addition thereto received out of the fund gathered by the court in excess of $500,000 in cash above all its liabilities.

The proceedings were commenced by the applicants here, Patterson & Major, as solicitors and counsel, in the Circuit Court for the District of Delaware, on February 10, 1898, by two bills—one in behalf of Edwards and others as income bond holders, for themselves and such other bondholders as might join them; and one in behalf of Edwards and others as stockholders, for themselves and such other stockholders as might join them. The stock suit was never carried to a

decree. The master to whom these claims were referred, according to the interlocutory decree which we will give later, has reported, nevertheless, that proceedings in the stock suit supported the proceedings on the creditors' bill and were essential to the success of the latter. We are not disposed to make any distinction between the two, inasmuch as the practical result was that complainant Edwards succeeded, as the financial result shows, as a stockholder as well as a creditor. The record is such that we are satisfied that the two proceedings are to be regarded for present purposes as though they had been consolidated, so that in what we say with reference to the claim of Patterson & Major we will treat the two as though they were consolidated, and not make any distinction, as the master has done, between services and disbursements in one suit and services and disbursements in the other.

From that time to the present litigation in behalf of the original complainants so far has been conducted by Patterson & Major, and they have remained their sole counsel and solicitors.

The bills demanded an accounting, to which on the face of the bills the complainants were fairly entitled. It was also so held by the Circuit Court for the District of Delaware in two cases. Edwards v. Bay State Gas Company (C. C.) 91 Fed. 942, 946. Nevertheless, the litigation was protracted and difficult to such an extent that the counsel for the respondent corporation, who were reputed as gentlemen of great ability, and also of great tenacity of purpose, were able to bar the appointment of a receiver until May 26, 1903. Then the receiver was appointed, and he has been active as such through all subsequent years until the balance of the fund was paid over to the respondent corporation, as we have said, and the receiver was discharged, except as to the amount retained to meet the claims now in controversy.

. In due course of time applications for the payment of the income bonds were made, out of which applications came the claims of the counsel of the second class. This litigation was also protracted, and resulted in a proceeding before Causten Browne, Esq., as master, which are printed in a volume known as the "Green Book," to which we have no particular occasion to refer with any detail. Two main propositions arose in reference to the income bonds, of which there were 507 outstanding, of $1,000 each, carrying interest at the rate of 7 per cent. per annum, of which none had been paid since 1893; thus accumulating, all together, if interest proved to be a valid claim, a possible amount of about $1,000,000. The main propositions about these bonds were, first, the claim on the part of the corporation that, as the principal of the income bonds had not become payable according to their terms, and especially as the corporation had been rendered solvent, holders of the bonds had no present right to have them liquidated and paid— a proposition which, if it could have been successfully maintained, would, in view of the improbability of income, and of the weakened credit of the Bay State Gas Company, although for the time solvent, have rendered their market value merely nominal, as they were not payable till May 1, 1939. The second main proposition was, in behalf of the income bond holders, that, although there was no evidence of any net income out of which the interest on the income bonds was to be paid according to their face, yet the respondent corporation had been

negligent and wasteful, and might have earned income sufficient therefor, so that, for that and other reasons, interest was to be added to the principal as we have said.

. In its own mind the court leaned to the view on the first proposition that, according to the rules in regard to proceedings against insolvent debtors, a corporation when once insolvent is always insolvent, so far as the winding-up litigation is concerned, so that in bankruptcy universal liquidation is the rule. On the other hand, the court was of the impression that income bond holders were bound by the terms of the bonds, and entitled to nothing unless there was actual net income. The bill was originally filed and proceeded on this basis, as we understand, because it asked an accounting of income, and claimed that it had been wasted or applied to purposes to which, under the terms of the income bonds, it was unlawful to apply it. However, it is plain that these questions were serious, involving, as they did, large amounts. In behalf of the bondholders it was claimed that their proposition as to the interest had been sustained in the decisions we have referred to, although a careful examination leads the court to the view that there was nothing decisive in them in this particular.

This court has been insistent that an ancillary suit should be regarded as strictly ancillary, and that the proper court of administration, as well as the court of distribution, is the court of the domicile. We have sometimes refused to appoint receivers until proceedings of some kind had occurred in the district of the domicile. Here nearly the entire fund gathered by the receiver as described was gathered in this district. Nevertheless, presumably we should have remitted it to the district of the domicile, and sent all the parties there to obtain distribution. The record contains somewhat with reference to the removal of the fund from this district to the district of Delaware, and its removal back; but in the eyes of the law it was of no consequence whether distribution was in Delaware or here, and it happens that the fact that it is now here, and is being distributed here, arises, not from any efforts of counsel, but from informal communications between the judges.

On claims being filed for the liquidation and payment of the income bonds, they were referred to Causten Browne, Esq., as master, before whom, as we have said, very protracted proceedings occurred, as we have also said. The second class of claims before us is for counsel fees and disbursements in regard to such liquidation and payment; the proceedings therefor having continued through various phases until, by compromise, the face of the income bonds and a modicum of interest have been paid. To a certain extent these claims involve other claims for services of the first class we have described; but, as this relates to minor amounts, we can dispose of them in connection with the claims of the same claimants of the second class.

The claim of Patterson & Major as submitted was for $125,000, plus disbursements of $5,230.66. There is no question made by the Bay State Gas Company as to the amount awarded by the master to whom these claims were referred for their services and disbursements. Its objections go to the validity of the whole. The services were of the nature we have described, filing the two bills for Jacob Edwards and others, and following them through to the end.

It is especially objected that no allowance can be made to Patterson & Major for services subsequent to the appointment of the receiver. It is true that the receiver took charge of all litigation after his appointment, and employed his own counsel, who have been paid; and it was through his efforts and those of his counsel that the funds we have referred to were secured. Whatever Patterson & Major did with reference to the proceedings instituted by the receiver was nominal; and their services after the receiver was appointed were of a purely incidental character, and the master did not allow a very large amount on account thereof. Nevertheless, that, under the general rule, the compensation to be awarded by the court does not stop with the appointment of a receiver, was determined, for ordinary cases, by a careful opinion passed down by the Circuit Court of Appeals for the Fifth Circuit in Burden Co. v. Ferris Co., 87 Fed. 810, 812, 31 C. C. A. 233. It was there shown that the obligations of counsel for the complainant in a bill like that filed in behalf of Jacob Edwards and others do not stop until the final decree, and do not stop pending proceedings. This rule was followed in the Second Circuit in Bowker v. Haight Co. (C. C. A.) 170 Fed. 67, in an opinion passed down in February, 1909. This question was passed over by us in Weiss v. Haight Co. (C. C. A.) 165 Fed. 132, in an opinion passed down November 17, 1908.

As to the generality of this claim, we have been unable to discover any substantial difference between this case and Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157. The counsel for the Bay State Gas Company made a vigorous and plausible contest on the ground that, in Trustees v. Greenough, the fund was not sufficient to pay the legal expenses, so that after all the question there was purely one of contribution between creditors of the same class. From one point of view that is true, and it is also true that in many cases cited before us, or which may be found, the question was one substantially of contribution between those of the same class. This principle is stated in Trustees v. Greenough in the sentence beginning at the foot of page 532, and ending at the top of page 533, of 105 U. S. (26 L. Ed. 1157). It is an equitable principle, especially where the bill is expressly filed by an individual in behalf of himself and other individuals of the same class, with the express condition that the other individuals shall contribute to the expense of litigation. Of course, when others come in, they by implication assent to the terms on which they are invited to enter, although this limited rule has not stopped with those who have formally accepted the invitation.

There is another rule which is a broader one. So narrow a rule as that claimed by the Bay State Gas Company would sometimes be difficult of application, because under some circumstances a mathematical working out of it would be impracticable, and plainly unjust. But it is unnecessary to discuss this question at any length. The case before us is one of the administration and distribution of a fund which is purely equitable, because gathered by the equitable process of the court in equity. The rule is almost universally recognized in the United States that such a fund is subject to the payment of equitable costs. At any rate that rule is universally recognized in the federal courts.

This is stated at the outset at the foot of page 532 of 105 U. S. (26 L. Ed. 1157) in Trustees v. Greenough, while the rule claimed by the Bay State Gas Company is stated there only alternatively, and as cumulative. What is claimed here by Patterson & Major is strictly equitable costs, though not known as costs to the statute law or the common law. The tribunal in which these proceedings are is no more controlled by such limited rules as to costs than it is governed by the statute law or the common law in reference to many other topics.

As we have said, the Bay State Gas Company, which is the only party adverse to the claims here, makes no discussion of the amount allowed Patterson & Major. The master made no absolute finding on most of the claims referred to him. He found certain questions of law which presented difficulties to him. Assuming that these questions of law are mainly out of the way, as we have shown they are, he awarded Patterson & Major for their services $61,390, and for disbursements $5,230.66. He included in the disbursements the sum of $1,000, as to which he says as follows:

"I find that $1,000 in addition to the above was deposited with the clerk of the court in lieu of bond as security for costs upon filing petitions for interveners."

What became of the $1,000, whether it was refunded, or whether it might have been refunded if called for, is not pointed out. Moreover, all the costs which the deposit was intended to protect may be taxed and recovered under the orders in reference to costs which have been or will be entered. Therefore we disallow that amount here. Patterson & Major excepted to the amount allowed by the master. There was properly some pruning as to minor matters pro and con by the master. For example, there were some questions about services for interveners other than the original complainants in the original bills in the Delaware district, also about allowances after the receiver was appointed; but we are satisfied that the whole amount allowed by the master is a liberal one, and that, in view of that fact, we need not stop with reference to the incidental items of the classes to which we have referred. We decide that an order may be entered, in accordance with the terms of the interlocutory decree of January 9, 1908, for the payment to Patterson & Major of $65,620.66, in full for everything to be paid to them in pursuance of that decree; the same to be acknowledged as in full for all claims against any person or fund for services and disbursements with reference to any of the proceedings in the suits instituted by them, or in any ancillary suits.

We now take up the claims of counsel for services and disbursements in intervening proceedings, and all others which are covered by the interlocutory decree of January 9, 1908. These claims stand on an entirely different basis, and would not be entitled to cognizance here, except for the interlocutory decree of January 9, 1908, and except for the understanding between the parties to which that decree gave effect.

That decree, with the amendment of February 26, 1908, and the preliminary decree of May 16, 1907, were as follows:

## May 16, 1907.

PUTNAM, Circuit Judge. This cause came on to be heard at this term upon the petition of the receiver for instructions, and upon the petitions of Charles H. Greenleaf for leave to intervene and for the establishment of claims and distribution of funds in receiver's possession, the petition of Thomas L. Sprague for leave to intervene, and the petition of Wilbur E. Barnard for leave to intervene. At the hearing due proof of service of the orders of notice upon said petitions was made before me. Certain additional appearances for holders of income bonds of the defendant were entered as follows:

C. Godfrey Patterson, Esq., for the complainants Jacob Edwards, Jacob Pfaff, Christopher M. Tower, George A. Smith, Lillie Chase, Fanny Chase, Gerard Bement and Katherine B. Bement, as executors of the last will and testament of Henry Pfaff, deceased, and for Caleb Haley and George H. Case, as executors, and Walter M. Bennett;

J. H. Benton, Jr., Esq., and H. H. Ward, Esq., for the defendant, Bay State Gas Company (of Delaware) ;

Messrs. Morse & Friedman for Dumont Clarke, and for John W. Dunklee, Emeline P. Barnes, Charles H. Greenleaf, and Herbert H. Barnes, executors of the estate of the late Amos Barnes, and Godfrey Morse;

Bancroft G. Davis, Esq., for Frank E. Smith ;

Benjamin L. M. Tower, Esq., for Thomas L. Sprague; and

A. A. Folsom, Esq., for Wilbur E. Barnard.

And permission was given by the court to file the following petitions and answers, to wit:

The petition of Dumont Clarke for leave to intervene ;

The petition of John W. Dunklee, Emeline P. Barnes, Charles H. Greenleaf and Herbert H. Barnes, executors of the estate of the late Amos Barnes, and Godfrey Morse, for leave to intervene ;

The petition of Frank E. Smith for leave to intervene, and the intervening petition of the said Frank E. Smith ; and

The answer of the defendant Bay State Gas Company (of Delaware) to the receiver's petition for instructions ;

The answer of the said defendant Bay State Gas Company (of Delaware) to the petition of Charles H. Greenleaf, intervening bondholder, and other similar petitions ;

The answer of Charles H. Greenleaf and Dumont Clarke to the receiver's petition for instructions ; and

The answer of the complainants to the receiver's petition for instructions (to be filed by C. Godfrey Patterson, Esq., on or before Friday, May 17, 1907).

Thereupon it is ordered and decreed that all the foregoing petitions and answers be referred to Causten Browne, Esq., special master, to take proofs in reference thereto, make findings of fact and rulings of law, and recommendations with reference to the premises, and report all the same to the court, with all the proofs and proceedings before him, on or before the 8th day of June, 1907.

It is further ordered and decreed that the receiver be allowed and directed to appear before the master and be heard by him, so far as all the general interests require the same, and to produce before the master all such books and papers as may be proper and expedient in reference to the premises.

It is further ordered and decreed that all persons who have filed petitions for leave to intervene shall be permitted to appear before the master and to be heard by him, and to submit proofs and make suggestions, and to object and except to the master's report, and to be heard on such exceptions.

It is further ordered and decreed that the receiver pay from the fund in his possession as receiver the charges and disbursements of the master and of himself in reference to the premises, including reasonable allowance to counsel for the receiver to be determined by the court.

By the Court: L. C. Tucker, Deputy Clerk.

## January 9, 1908.

PUTNAM, Circuit Judge. This cause came on to be heard at this term upon the petition of the receiver for instructions, and upon the petitions of Charles H. Greenleaf for leave to intervene, and for the establishment of

172 F.— 62

claims and the distribution of funds in the receiver's possession, and petition of Thomas L. Sprague for leave to intervene, and petition of Wilbur E. Barnard for leave to intervene, and petition of Dumont Clarke for leave to intervene, and petition of John W. Dunklee et al., executors, for leave to intervene, and the petition of Godfrey Morse for leave to intervene, and petition of Frank E. Smith for leave to intervene, and intervening petition of Frank E. Smith, and answers to the several petitions; and thereupon, the several intervening petitioners and said Bay State Gas Company of Delaware and the complainants in said cause consenting thereto, it is ordered, adjudged, and decreed as follows:

First. The receiver shall set aside and retain from the funds in his possession a sum sufficient to pay the sum of ten hundred and seventy ($1,070) dollars to the holders and owners of each and every one of the five hundred and seven (507) outstanding income bonds of the Bay State Gas Company of Delaware, bearing date May 1, 1889.

Second. The receiver shall out of such fund pay to the owner and holder of each of said income bonds the sum of ten hundred and seventy ($1,070) dollars as soon as each such bond shall be surrendered to the receiver for cancellation.

Third. The intervening petitioners shall not be required to make other or further proof of their ownership of said bonds than they have made before Causten Browne, Esq., the master appointed in this cause.

Fourth. All persons having claims against the defendant company, the Bay State Gas Company of Delaware, may present the same to the receiver on or before the 1st day of April, 1908, and any claim not assented to by the defendant and the receiver shall, immediately upon presentation, be referred to Henry A. Wyman, Esq., of Boston, as special master to hear the parties and their evidence and report the facts to the court. No claim presented after the aforesaid date shall be considered or allowed by the receiver.

Fifth. The receiver is further ordered and decreed to give notice of the entering of this decree and that the owners and holders of the income bonds hereinbefore mentioned may present the same to him for payment and cancellation of same, together with proof of their ownership of said bonds; and that claims against the defendant may be presented and proved as hereinbefore ordered, by publishing a copy of this decree in a newspaper published in the city of Boston, a newspaper published in the city of New York, and a newspaper published in the city of Philadelphia.

Sixth. The receiver shall further retain in his hands a sum sufficient to cover the disbursements made by or on behalf of the complainant and of the intervening bondholders for examiners' fees, stenographers' fees, clerks' fees, and other expenses incurred in connection with the suit and proceedings in this jurisdiction, and in connection with the suits and proceedings in the United States Circuit Court for the District of Delaware which resulted in the appointment of the receiver, and to cover, also, allowances to counsel for the complainants and for intervening petitioners and for the defendant, and allowance to the receiver and receiver's counsel, and to cover the charges and disbursements of the master in the proceedings had under the interlocutory decree referring said cause to Causten Browne, Esq., as master, and to cover the claims presented against the defendant company under the terms of this decree, and the master's fees and expenses in any reference under this decree, as may be agreed to by the receiver and the defendant company, or as may be determined hereafter by this court.

Seventh. The receiver is authorized to pay from the funds in his hands in this jurisdiction as follows:

(1) The bonds presented as and when they may be presented as hereinabove provided.

(2) All claims, allowances, counsel fees, and expenses otherwise mentioned in this decree as and when they may be assented to by the defendant and receiver, or as and when they may be adjudicated, and the amount thereof determined by the court.

Eighth. The balance of the fund remaining in the receiver's hands over and above what may be required to pay said bonds as aforesaid, and said allow-

ances of disbursements and said claims, shall be forthwith remitted by the receiver to the court of primary jurisdiction in Delaware.

Ninth. It is further ordered, adjudged, and decreed that any person herein authorized to present any claim whatsoever to the receiver may, in lieu of so presenting the same to the receiver, file it in the office of the clerk of this court by a petition addressed to the court and properly setting out the details of the claim. Thereupon the receiver shall be duly notified of the filing thereof.

Tenth. It is further ordered, adjudged, and decreed that every income bond paid by the receiver as herein provided shall immediately on payment thereof be canceled by him by suitable inscription thereon, showing the payment thereof by him in accordance with this decree, and naming the date of payment and the person to whom paid, and immediately thereafter the same shall be filed by the receiver with the clerk of this court, to remain in the office of such clerk until otherwise ordered.

Eleventh. It is further ordered, adjudged, and decreed that the notice to be given by the receiver as herein provided shall be by publishing three several times in the Boston Daily Advertiser, a newspaper published daily in the city of Boston, in The Sun, a newspaper published daily in the city of New York, in The Morning News, a newspaper published daily in the city of Wilmington, Delaware, and in The Press, a newspaper published daily in the city of Philadelphia, copies of this decree duly certified as such by the clerk of this court, and that the receiver shall cause the same to be published as aforesaid in each of the above papers once during the current month of January, and at least twice in each of such papers during the month of February, next, and that the receiver shall make to the court due proof of such publications on or before the 14th day of March next.

By the Court:                          Alex. H. Trowbridge, Clerk,
                                          By L. C. Tucker, Deputy Clerk.

We hereby assent to the entry of the foregoing decree, the length of time for the presentation of claims to be 30 days from the date of the last publication, or such other time as the court may fix, and the special master to be Henry A. Wyman, Esq., or such other person as the court may name.

Henry Major,
C. Godfrey Patterson,
    Counsel for Complainants.
C. Godfrey Patterson,
    Counsel for Robert J. Edwards.
C. Godfrey Patterson,
Counsel for Haley & Case, Executors, and Bennett.
Morse & Friedman,
Counsel for Greenleaf, Dunklee, Clarke, Godfrey Morse and Emeline P. Barnes et al., Executors of Estate of Amos Barnes, Income Bondholders.
Morse & Friedman,
Counsel for Godfrey Morse, Executor of Estate of Leopold Morse.
Benj. L. M. Tower,
    Counsel for Thomas L. Sprague.
H. M. Burton,
    Counsel for Wilbur E. Barnard.
Bancroft G. Davis,
    Counsel for Frank E. Smith.
J. H. Benton,
N. Matthews,
Counsel for Bay State Gas Company of Delaware.
Alfred S. Hall,
    Counsel for Walter D. Middleton.

February 26, 1908.

PUTNAM, Circuit Judge. It is ordered, adjudged, and decreed that the decree entered on January 9, 1908, be amended so that the fourth paragraph thereof shall apply to all claims to which said decree relates, whether against

the Bay State Gas Company of Delaware, or against the said receiver, or any funds which have come or may come into his hands.

It is further ordered, adjudged, and decreed that there be given Henry A. Wyman, Esq., as master under the decree entered on January 9, 1908, a certified copy of the said decree and of this amendatory decree, which will stand as his commission in reference to all the matters covered thereby.

By the Court:                         Alex. H. Trowbridge, Clerk,
                                        By L. C. Tucker, Deputy Clerk.

The interlocutory decree of January 9, 1908, was entered after his report had been made by Mr. Browne, and before the questions involved·had been submitted to the court. All there was in that direction were the informal expressions of the views of the court, already stated, that the holders of the income bonds were entitled to have their bonds liquidated and paid and that nothing could take the place of net income, so that no interest in arrears could be recovered unless it was shown that there had been net income which had been misappropriated or squandered. As to the claims of counsel for the interveners, they are opposed, both as to their validity, so far as we are concerned, and as to amounts. As we have already said, the claims are concretely represented as to the amount of legal services and labor involved by the very voluminous "Green Book," to which we have already referred.

It is claimed by the Bay State Gas Company that the interveners were early informed that the proposition of the Bay State Gas Company that the holders of the income bonds were not now entitled to have them liquidated and·paid was abandoned. Very likely the burden of the conversations on that topic was in that direction. At any rate, the master was so impressed thereby as to find in substance that the ·interveners were advised that they had no occasion to litigate that question, and that, therefore, the litigation before Mr. Browne should have been limited to the question of interest, and that as to this the interveners were wrong; so that, on that, on both propositions, from an equitable point of view, their counsel should take nothing. On the other hand, the court is clear that, if the Bay State Gas Company did not intend to contest the question of liquidation and payment, it should have informed the court by some pleading or other full statement to that effect, and that, in the absence of this, the interveners were entitled to litigate, and should have done so.

As to the labor and expense, represented in the "Green Book," which related to the claim of the interveners for interest, that they finally abandoned this claim, that the claim could not legally be maintained, and that, therefore, in an equitable point of view, they should take nothing by it, the court accepts the view of the Bay State Gas Company that what is described as "equitable costs" is ordinarily, though not always, analogous to allowances for salvage services. This right to allowances arises out of the creation of a fund by the parties who claim them, and not out of ordinary services in litigation. Ordinarily the fund must have been created by the services. Here there is nothing of that nature. There is no claim that any fund was thus created. Therefore there is no ordinary basis for applying the rules which support the claim of Patterson & Major, and no basis for a charge against the fund for these services and disbursements, except the agreement of counsel as represented in the decree of·January 9,

1908. Looking at the circumstances of the case as known to the court at the time this decree was assented to, the court has no question that it was a compromise decree, and that it was intended to provide generally for the services and disbursements of the class which we are discussing. Therefore, like all other claims for professional services and disbursements, these were to be rendered to, and originally paid for by, clients independently of the success of the counsel employed, so long as there was nothing to impugn good faith or reasonable care.

It is apparent, as we have already expressed our opinion, that, notwithstanding the inchoate views of the court, as we have stated them, there were, in reference to this question of interest, and also, as the case stood, in the absence of any pleadings to the contrary, on the question of the immediate realization of the income bonds, sufficient to sustain good faith and reasonable care on the part of the counsel for the interveners in proceeding as they did. In fact, it may well be said that, in the state of the authorities, especially in view of the fact that the proposition had not been authoritatively determined by the Supreme Court of the United States, counsel for the interveners would have been at fault if they had not made some effort with reference to the question of the very large amount of interest involved, as also it may be said that the counsel would have been at fault if, after careful investigation was had, they had refused to assent to a compromise which enabled them to realize cash for the full face of securities which would have been almost nonnegotiable for a series of years if the litigation had continued. At any rate, in view of the circumstances, the court must construe the interlocutory decree of January 9, 1908, as intending to reimburse the services and disbursements of the counsel for the interveners in such sums as they might properly have charged their clients, so that each client will be able to receive his income bonds in full, net, and without charges or rebates. By force of that decree the court is to award here whatever, under the ordinary rules between counsel and client, counsel would have been entitled to recover for services and disbursements; and this independently of any objection that, under the rule which protects the claim of Patterson & Major, and without the decree of January 9, 1908, nothing could have been' awarded in this proceeding.

The principal claim of the class we are considering is that of Morse & Friedman. Morse & Friedman apparently filed sundry income bond holders' bills in equity for their special clients in the district of Delaware subsequently to the bills filed by Patterson & Major, but looking for similar relief. These bills resulted in nothing, although we understand they were consolidated with one or both of the original bills filed by Patterson & Major. Services and disbursements in independent bills of that character are not within the scope of the decree of January 9, 1908; and it may well be doubted whether they are within the jurisdiction of this court. Morse & Friedman also intervened directly for sundry income bond holders in the suit brought by Patterson & Major, as they had a right to do by the invitation to join contained therein. Of course, their clients in the independent suits to which we have referred, after those suits were consolidated, if they were consoli-

dated, with the suit brought by Patterson & Major, are entitled to be regarded also as interveners in the original proceedings.

These interventions by Morse & Friedman, and also by other counsel, were allowed by the Circuit Court in Delaware; but this, under the settled rules of practice, gave the interveners no standing except as interveners. As interveners they had no right to control the litigation, and no right to interfere with it, and no occasion to employ counsel for either, unless by special leave of the court. Apparently one or more of the interveners made objections against the competency of Patterson & Major, and sought to obtain a standing other than as mere interveners; but the charges against Patterson & Major were not sustained, and by the order of the court the objectors were left to remain mere interveners. The duty of lawyers acting in behalf of interveners under these circumstances does not involve anything more than the ordinary duty of solicitor, and in no way involves duties corresponding to those of barristers. Therefore their charges should be on the scale of charges by solicitors, being merely for drafting applications, attendance, and disbursements; and, in valuing the compensation to be allowed mere interveners, that view of the law must be maintained by us. This does not refer to the active intervention with reference to the proceedings before Mr. Browne, which was active for the purpose of securing liquidation and payment, and in which, in the eyes of the law, all interveners stood on the same basis of right and control.

In addition to the interventions which we have referred to, Morse & Friedman claim to have made certain investigations and performed certain services with reference to various matters concerning the litigated assets of the Bay State Gas Company. As to these, however, they obtained no standing as counsel in the Circuit Court for the District of Delaware, and therefore they cannot as to such be recognized by us now, for the reasons we have already suggested. The principal services of Morse & Friedman, indeed the services which constitute the basis for any considerable allowance to them, were in connection with the litigation represented by the "Green Book." In that litigation they represented quite an amount of income bonds, although not very large. Yet, though not in any way pointed out by the law as having the exclusive control of those proceedings, they initiated them, and, by common consent, they seem to have borne the burden thereof.

Their claim covering all their services and disbursements was $35,-513.15. The master, on account of certain propositions of law which embarrassed him, made only contingent findings in their favor. The propositions of law which he reported to the court we have disposed of by what we have already said. Going over his computations, we think we substantially adopt his award so far as the value of the services is concerned, and do justice so far as we can understand this complicated record, and make a slight addition, by directing that an order be entered paying them $10,000 for all their services and disbursements, with the same provision that this be in full as stated with reference to our allowance to Patterson & Major.

We will state here once for all that this provision which we direct with reference to making the allowance for Patterson & Major to be in full is to be so stated in all the orders herein provided for.

The next claim is that in favor of Mr. Bancroft G. Davis. The court knows personally that Mr. Davis was attentive with reference to the litigation represented by the "Green Book"; but on the whole it is satisfied that the amount suggested by the master, $1,800, is liberal compensation for all services and disbursements, and an order will be entered accordingly.

With reference to the claim of Mr. Benjamin L. M. Tower, which, so far as we can discover, entitles him only to a solicitor's allowance in connection with interventions, we direct an order for $552.71, for services and disbursements, the same to be awarded to the legal representatives of his estate, who have appeared of record.

Burton & Folsom have filed no brief before us. We understand that they were purely counsel for interveners who proceeded before Mr. Browne. The present master has reported an allowance of $300 in full for services and disbursements, with which we are satisfied; and we direct an order accordingly.

Mr. Hall occupied a like position with Burton & Folsom, and we direct an order for $100 for services and disbursements, as suggested by the master.

Mr. Hoffecker has filed no brief before us. We cannot discover that he rendered any services, except as solicitor for interveners in one or both of the original suits in the district of Delaware. He claims to have been employed as counsel in connection with Patterson & Major, but we find no proper evidence thereof; and we accordingly direct an order in his favor, on the basis of the computation for solicitors, in the sum of $150.

Mr. Kittredge apparently did not enter any appearance as solicitor or counsel; so that, though he may have been useful as a negotiator, which is the characterization given him by the master, he has no standing which entitles him to recognition from the court in these proceedings.

Mr. Barton was employed by the respondent corporation, and his claims should have been proved in the usual way before the receiver. We do not think we are bound to take any jurisdiction in reference to them; and, as the questions of fact involving the amount and the value of his services are very doubtful and complicated, we shall direct that his claim stand as a claim to be adjusted in the usual way by the receiver under the general orders for proofs of claims. If, however, both parties agree to an order allowing him the amount reported by the master, $1,271.46, it may be entered.

The claim in behalf of the estate of James E. Leach is an anomalous one, over which we have no jurisdiction. It is a claim for compensation as a receiver in a suit brought by the Bay State Gas Company, out of which that corporation apparently received a very large benefit. In the final decree, apparently by an oversight, no compensation was awarded him. The bill was filed in a state court, and that court alone has, or had, jurisdiction to determine or award the compensation now asked for. It is plain, however, that the representatives of his estate have a strong equity against the respondent corporation, and the court is confident that the matter will be satisfactorily and fairly adjusted without interference by us.

Interest will be allowed on the amounts herein awarded at the rate of 2½ per cent. per annum from the time the fund from which these claims will be paid was deposited in the National Shawmut Bank in accordance with the order entered on August 12, 1908, to the date of our order appended hereto; and no other interest will be allowed. Thomas v. Western Car Company, 149 U. S. 95, 116, 117, 13 Sup. Ct. 824, 37 L. Ed. 663; Hutchinson v. Otis, 115 Fed. 937, 944, 53 C. C. A. 419.

No costs will be allowed, except what may be due the clerk, including all printing, with the printing of this opinion, and the disbursements of the receiver, and the compensation and disbursements of the master, Henry A. Wyman, so far as each has not been satisfied. The cost of reporting additional evidence in accordance with the order of April 1, 1909, will be left standing on that order. The clerk is directed to submit a taxation to the respondent corporation, and the respondent corporation is directed to submit an order in accordance with the taxation when the same has been settled.

Each claimant to whom an allowance has been made will file a draft order within one calendar month from the day of the passing down of this opinion, in the absence of which the respondent corporation will enter an order that his claim is dismissed. The respondent corporation may file corrections of draft orders within two weeks from the expiration of such calendar month. The clerk is directed to enter the following order:

Ordered, that orders allowing or disallowing the claims referred to Henry A. Wyman, master, per the interlocutory decree of January 9, 1908, as amended, be entered as directed in the opinion passed down this 23d day of September, 1909, and all other claims referred to the master under that decree are hereby dismissed on their merits, and the taxation of the costs and the payment thereof will be as directed in such opinion.